IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                              Case No. 2:25-cr-20014

JAMES GILLEY; and
BRYAN HUCKEBA                                              DEFENDANTS

## ORDER

Before the Court is a Report and Recommendation ("R&R") issued by the Honorable Mark

E. Ford, United States Magistrate Judge for the Western District of Arkansas.  ECF No. 64.  Judge

Ford recommends that Separate Defendant James Gilley's ("Gilley") Motion to Suppress (ECF

No. 41) be denied.  Gilley has filed timely objections to the R&R.  ECF No. 65.  The Court finds

the matter ripe for consideration.

## I. BACKGROUND

On June 19, 2025, Captain Chris Goodman of the Arkansas State Police ("Captain

Goodman") was parked perpendicularly in his patrol vehicle alongside Interstate 40 ("I-40") near

the Arkansas-Oklahoma border observing eastbound traffic.  At approximately 11:40 a.m., Captain

Goodman observed a tractor-trailer approach his position.  He also observed a GMC Acadia

traveling behind the tractor-trailer in the same lane and closing the distance between them.  Both

vehicles passed directly in front of Captain Goodman.  He immediately pulled onto I-40 before

initiating a stop of the Acadia for following the tractor-trailer at an unsafe distance.

Co-Defendant Bryan Huckeba ("Huckeba") was driving the Acadia while Gilley was in

the front passenger seat.  Once stopped, Gilley informed Captain Goodman that he had rented the

Acadia in Los Angeles, California, two days prior and was scheduled to drop it off in Georgia that

day.  Gilley showed Captain Goodman the rental agreement on his phone and his identification.

Huckeba also provided a paper copy of his driver's license.  Approximately four minutes into the stop, Captain Goodman requested the assistance of a K-9 unit.  After the K-9 unit arrived, it signaled to the presence of illegal drugs during its walk around the Acadia.  Captain Goodman then conducted a search of the Acadia that revealed approximately 177 pounds of methamphetamine.

On July 22, 2025, a grand jury indicted Gilley with conspiracy to distribute over 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846, and with aiding and abetting the possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1).  ECF No. 1.  On March 11, 2026, a Superseding Indictment charged Gilley with the same offenses but added a Notice of Intent to Seek Sentencing Enhancement Pursuant to 21 U.S.C. § 851 and a Forfeiture Allegation.  ECF No. 52.

On January 20, 2026, Gilley filed his Motion to Suppress seeking to bar the introduction of physical evidence seized during the June 19, 2025 traffic stop, arguing that the initial stop violated the Fourth Amendment.  ECF No. 41.  The Court subsequently referred the motion to Judge Ford. ECF No. 42.  The Government responded in opposition to Gilley's motion to suppress (ECF No. 48), and Gilley replied (ECF No. 49).  On March 12, 2026, Judge Ford conducted an evidentiary hearing on Gilley's motion.  During the hearing, Judge Ford took testimony from Captain Goodman and Alan Aiken ("Mr. Aiken"), a former Arkansas State Trooper that Gilley called as a witness.  Judge Ford also accepted the associated exhibits into evidence, such as the dashcam footage from Captain Goodman's patrol vehicle at the relevant time.[1]

On April 3, 2026, Judge Ford issued the instant R&R recommending that Gilley's motion to suppress be denied.  Plaintiff filed a timely objection to the R&R.  ECF No. 65.  The objection

---

[1] Though not all evidence submitted at the hearing is found on the docket, the Court has reviewed this material.  The Court has also reviewed an audio recording of the hearing testimony.

is sufficiently specific to require a de novo review of Gilley's motion to suppress. *See Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990) (noting that timely and specific objections necessitate that a court conduct a de novo review of a magistrate's recommendation).

## II. DISCUSSION

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A law enforcement detention of a vehicle for a traffic violation is a "seizure" within the meaning of the Fourth Amendment. *Whren v. U.S.*, 517 U.S. 806, 809-10 (1996). Consequently, any traffic stop "must be supported by reasonable suspicion or probable cause." *U.S. v. Williams*, 929 F.3d 539, 544 (8th Cir. 2019). "Any traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver, but the officer must have an objectively reasonable basis for believing that the driver has committed a violation." *U.S. v. Walker*, 840 F.3d 477, 483 (8th Cir. 2016). A mistake of law or fact in determining probable cause or reasonable suspicion does not invalidate a stop if the mistake was objectively reasonable. *Williams*, 929 F.3d at 544. The probable cause or reasonable suspicion evaluation focuses on what an officer "reasonably knew at the time" instead of viewing the circumstances with "the benefit of hindsight." *U.S. v. Hanel*, 993 F.3d 540, 543 (8th Cir. 2021). A passenger in a vehicle subject to a traffic stop is seized for Fourth Amendment purposes and has standing to challenge the seizure. *See U.S. v. Lindsey*, 43 F.4th 843, 847 (8th Cir. 2022). Evidence obtained from a search originating from an unlawful seizure may require suppression of that evidence. *See id*.

Gilley's motion centers on his argument that there was no probable cause or reasonable suspicion permitting Captain Goodman to initiate the traffic stop. ECF No. 41. He contends that there could not have been a reasonable belief that the alleged violation of Arkansas Code § 27-51-

3

305(a) had occurred, which was the sole basis of the stop.  That statute reads "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having regard for the speed of vehicles and the traffic upon and the condition of the highway."  Ark. Code Ann. § 27-51-305(a).  Gilley states that the Acadia was more than two car lengths behind the tractor-trailer, that there were ideal driving conditions at the time, and that its position was consistent with other vehicles traveling along that lane of I-40 at that time.  He asserts that those circumstances remove any possibility that the Acadia was violating § 27-51-305(a) when Captain Goodman decided to initiate the stop.  Gilley also cites *Pargament v. State*, 577 S.W.3d 761 (Ark. App. 2019) as holding that, under § 27-51-305(a), an officer must consider if another vehicle's conduct caused the subject vehicle to be in close proximity and must allow sufficient time for the subject vehicle to adjust its distance from the vehicle ahead of it.  Gilley asserts that no such consideration or allowance took place.  The Court notes that Gilley states he is not currently challenging other aspects of the stop, such as the delay associated with waiting for the K-9 unit or the subsequent search of the vehicle.

In response, the Government argues that the situation Captain Goodman observed created a reasonable belief that the Acadia was violating § 27-51-305(a).  ECF No. 48.  The Government cites the dashcam footage from Captain Goodman's patrol vehicle and still images taken from it that reveal approximately one second of travel time between the tractor-trailer and the Acadia when it passed Captain Goodman.  The Government then notes that Captain Goodman's training and experience informed him that following a tractor-trailer at that distance was not safe and contends that it gave Captain Goodman a reasonable belief that the Acadia was violating the statute.  The Government also contends that any mistake by Captain Goodman regarding the law or facts in this situation was objectively reasonable and does not negate the probable cause to

initiate the stop.  In reply, Gilley argues that the Government attempts to apply a fixed time-gap standard which is not outlined in the circumstance-specific statute and that such an observation, on its own, is insufficient to establish probable cause.  ECF No. 49.

The parties maintained these arguments at the evidentiary hearing conducted by Judge Ford.  Captain Goodman offered testimony regarding why he believed the Acadia was violating § 27-51-305(a) and how his application of a "two-second" guideline for evaluating the safety of following distance indicated to him that the Acadia was at an unsafe distance.  The Government concluded that this testimony demonstrates that Captain Goodman had a reasonable belief that the Acadia was violating the statute.  Mr. Aiken offered testimony and exhibits related to measurements taken of the location at which Captain Goodman was parked prior to initiating the stop of the Acadia.  He stated that comparisons of the space visible in the dashcam footage and the length of the Acadia create an estimated five car-lengths distance between the tractor-trailer and Acadia when they passed Captain Goodman.  Gilley contended that this amount of distance, coupled with the typical highway speeds of the relevant vehicles and the ideal conditions that day, indicates that there was not probable cause that the Acadia was violating § 27-51-305(a).

Judge Ford concluded that the hearing testimony and exhibits demonstrated that there was probable cause that the Acadia in which Gilley was a passenger was violating § 27-51-305(a) by following the tractor-trailer too closely.  ECF No. 64.  Judge Ford reasoned that, in light of Captain Goodman's training and experience, the one-second gap between those two vehicles gave him a reasonable belief that the Acadia was violating the statute as it drove past him.  Judge Ford also determined that any mistake by Captain Goodman at the time was objectively reasonable and did not eliminate his authority to initiate the traffic stop.  Therefore, Judge Ford recommends that Gilley's motion to suppress be denied.

Objecting to the R&R, Gilley argues that Judge Ford failed to apply a purported governing standard for such a traffic stop previously set out by this Court in *U.S. v. Grant*, Case No. 20-cr-20007-PKH-MEF, 2020 WL 4038331 (W.D. Ark. July 10, 2020).[2] ECF No. 65. Gilley contends that *Grant* held that proximity alone is insufficient to create a reasonable belief that a vehicle was violating § 27-51-305(a) and consequently recommended granting a motion to suppress evidence obtained from a stop initiated on that basis. Gilley adds that the time-gap consideration Captain Goodman used is not part of the statutory considerations and that there is no evidence Captain Goodman evaluated those considerations.

Upon review of the parties' arguments and the evidence presented at the hearing, the Court agrees with Judge Ford that there was probable cause to support the challenged traffic stop. Captain Goodman testified that the gap between the Acadia and the tractor-trailer indicated to him that the Acadia was following at a distance that was too close and created a hazard. Captain Goodman noted that he generally applies a "two-second" guideline derived from transportation studies and taught during State Trooper training to determine if a vehicle is following too closely. He explained that two seconds of distance typically provides a following vehicle sufficient time to react to any incident or change on the road ahead. Dashcam footage from the patrol vehicle and screenshots from that footage demonstrate that there was an approximately one-second gap between the vehicles.

Captain Goodman also testified that the Acadia had either moved closer to the tractor-trailer or maintained its close proximity by the time he caught up to it to initiate the stop. The dashcam footage supports this testimony. Captain Goodman also noted that following a tractor-

---

[2] Gilley cites to a Report and Recommendation issued by Judge Ford and then adopted by former District Judge P.K. Holmes, III. *See U.S. v. Grant*, 2020 WL 4047221 (W.D. Ark. July 17, 2020) (adopting Report and Recommendation and granting the defendant's motion to suppress).

trailer too closely is more hazardous than doing so behind typical passenger vehicles because the size of a tractor-trailer obscures visibility of the road ahead to a greater extent.  Captain Goodman also stated that he did not observe the tractor-trailer suddenly brake, reduce speed, or change lanes to quickly force the Acadia into close proximity.  Thus, Captain Goodman concluded from these observations that the Acadia was violating § 27-51-305(a) by being only one second of travel time behind the tractor-trailer and continuing to close the distance.  Considering the contextual discretion inherent in the language of the statute, these circumstances and observations gave Captain Goodman an objectively reasonable belief that the Acadia in which Gilley rode was violating § 27-51-305(a) at the time he initiated the traffic stop.  Accordingly, the Court finds that the traffic stop was supported by probable cause and that Gilley's motion to suppress evidence gathered as a result of this seizure must be denied.  *See Walker*, 840 F.3d at 483.

Gilley's arguments to the contrary are not persuasive.  Presuming that Mr. Aiken's measurements and calculations are correct, they do nothing to undermine the Court's view that Captain Goodman had an objectively reasonable belief at that time that the Acadia was following at a distance that violated § 27-51-305(a).  Mr. Aiken conceded at the hearing that higher speeds increase necessary braking distance and that Captain Goodman did not have the option of taking such measurements prior to a traffic stop.  Thus, the Court views any miscalculation by Captain Goodman of the distance between the tractor-trailer and the Acadia—even if it is indicative of the Acadia following at a safe distance—as an objectively reasonable mistake that does not undermine the existence of probable cause.  *See Williams*, 929 F.3d at 544.

Further, Gilley's reliance on this Court's analysis in *Grant* is misplaced, as that report and recommendation dealt with distinctly different circumstances.  That matter involved a vehicle stopped pursuant to § 27-51-305(a) after a separate vehicle merged into the lane in front of it and

7

created the close proximity. *Grant*, 2020 WL 4038331, at *1-2. Citing the Arkansas Court of Appeals' holding in *Pargament*, which also involved a vehicle stopped pursuant to this statute after a separate vehicle merged in front of it, the report and recommendation issued in *Grant* determined that such a situation does not create an objectively reasonable belief that § 27-51-305(a) has been violated. 2020 WL 4038331, at *3-5 (citing *Pargament*, 577 S.W.3d at 763-64). Those are not the circumstances in this matter. Captain Goodman testified that he did not observe the tractor-trailer recently merge into the lane in front of the Acadia or suddenly lower its speed and force the Acadia to close the distance between both vehicles. Moreover, this Court previously rejected a suggestion that the *Pargament* holding is relevant to stops pursuant to § 27-51-305(a) when the stopped vehicle alone created the allegedly unsafe distance between it and the vehicle ahead. *See U.S. v. Cox*, Case No. 2:19-cr-20023-PKH, 2019 WL 4197604, at *3 (W.D. Ark. Sept. 4, 2019) (determining that *Pargament* did not apply to traffic stop initiated pursuant to § 27-51-305(a) when a separate vehicle is not responsible for the stopped vehicle's following distance), *aff'd*, 992 F.3d 706 (8th Cir. 2021).

### III. CONCLUSION

For the reasons stated above, the Court hereby adopts Judge Ford's R&R (ECF No. 64) in toto. Accordingly, Defendant James Gilley's Motion to Suppress (ECF No. 41) is **DENIED**.

**IT IS SO ORDERED**, this 20th day of May, 2026.

/s/ John Thomas Shepherd
John Thomas Shepherd
United States District Judge

8